UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RONNIE WATKINS,

        Plaintiff,

  v.                                                Case No. 13-C-0007

TOM LANCOR,

        Defendant.

**DECISION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Ronnie Watkins, an inmate at Green Bay Correctional Institution ("GBCI"), filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendant Tom Lancor, a food services chef at GBCI, violated his constitutional rights. Watkins alleges that Lancor was deliberately indifferent to his serious medical needs when he disregarded Watkins' need for medical assistance after Watkins fell and broke his finger while working in the prison kitchen under Lancor's supervision. Deliberate indifference to serious medical needs by prison staff constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Watkins claims he was required by Lancor to continue performing his duties in the kitchen, and was unable to obtain medical care until he was seen by the Health Services Unit (HSU) several days later. The case is before the court on Lancor's motion for summary judgment. Lancor contends he is entitled to summary judgment on the ground that Watkins failed to exhaust administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997(e)(a) (2013). For the reasons given below, Lancor's motion will be granted and the case dismissed.

**BACKGROUND**

The complaint arises out of a March 15, 2010 incident in which Watkins alleges he slipped and fell while unloading the dish washing machine in the GBCI kitchen and suffered a broken finger. Watkins alleged that GBCI policy required all inmates assigned to the kitchen to wear safety overshoes. On the date in question, however, due to an alleged shortage of safety equipment, Watkins was not wearing overshoes. He alleges that as a result he slipped in an area of the kitchen floor on which water from the dishwasher leaked. He dropped a large silverware rack on his hand and broke his finger. Watkins asserts he immediately informed Lancor of his injury and requested medical attention, but Lancor failed to provide any assistance and required Plaintiff to continue working without any medical attention until March 18, 2010 when a nurse examined Watkins' injury.

Watkins filed a complaint regarding the March 15, 2010 incident through the Inmate Complaint Review System (ICRS) at GBCI. Plaintiff's complaint, dated March 31, 2010, stated:

> on the above date, I were assigned to work in the dishroom to do the silverwear, As I were carring the steel rack with the silverware in it, I slipped on the wet floor and dropped the steel rack on my hand, I had the chef (Tom) to write up an accident report and I went to medical a few days later and they took an x-ray and found out that my finger is broken. A copy of the accident report were sent to security and medical.

(ECF No. 1-2 at 6.) The complaint was returned by the Institution Complaint Examiner (ICE) on April 1, 2010 because the complaint was unclear and was written "more as an informational piece than a complaint." (ECF No. 1-2 at 7.) The ICE instructed Watkins that "complaints shall contain only one issue and that issue shall be clearly identified," consistent with Wisconsin Administrative Code § DOC 310.09(1)(e). (*Id.*) Watkins was instructed to state specifically what his complaint

was, and further told that "[i]f it is about not receiving proper medical attention, please contact Mrs. Zwiers in HSU prior to re-filing this complaint." (*Id.*)

Watkins did not contact HSU, but per the ICE's instructions, he filed what was classified as Offender Complaint GBCI-2010-7242. The complaint, dated April 1, 2010, stated:

> On the above date I was assigned to work in the dishroom in an unsafe working conditions being that the floor stays slippery from it being wet, on this date I slipped and dropped a steel rack on my hand and broke a bone in my finger, I've already talked with the kitchen supervisors about this and Chef Tom [Lancor] wrote an accident report. I'm complaining about the negligence that the kitchen staff shows by not making my working conditions safer.

(Rose Aff. Ex. B 00021.) Although the ICE rejected the complaint on April 2, 2010 as being beyond the fourteen-calendar-day limit pursuant to § DOC 310.11(5)(d), the reviewing authority overturned the rejection after Plaintiff appealed. As a result, the ICE proceeded to consider his Offender Complaint GBCI-2010-7242 on the merits. On April 21, 2010, after an investigation and review of the accident report, the ICE recommended Watkins' complaint be dismissed, and the reviewing authority subsequently agreed and dismissed Watkins' complaint on April 23, 2010.

Thereafter, Watkins appealed the dismissal of Offender Complaint GBCI-2010-7242 to the Corrections Complaint Examiner (CCE) office. Watkins raised the issue of unsafe working conditions in his CCE appeal, stating "you can go into the dishroom any day of the week and the floor is very slippery. []I've worked in the kitchen for 1 year 5 months and were assigned to the dishroom right up until I slipped and broke my finger during this time I have never once been given or offered any gloves, goggles, or yellow overshoes to work in." (Rose Aff. Ex. B 00009-10.) In addition, Watkins noted, "I wasn't sent to medical by the kitchen staff. I had to file a medical request a day or two later to go to medical. And I was seen three days after my accident. Which was March 18, 2010 and I broke my finger March 15, 2010." (Rose Aff. Ex. B 00009-10.)

3

After reviewing Watkins' appeal, the CCE recommended, on June 24, 2010, the complaint be dismissed, stating, "[t]he institution's decision reasonably and appropriately addressed the issue raised by this inmate. In addition, the CCE notes that, on appeal, the inmate presents no new information that would warrant recommending overturning that decision. Thus, it is recommended this appeal be dismissed." (Rose Aff. Ex. B 00007.) On July 24, 2010, the Office of the Secretary, in agreement with the CCE recommendation, dismissed the appeal of Offender Complaint GBCI-2010-7242.

After the final decision his appeal of the institution's dismissal of Offender Complaint GBCI-2010-7242, Watkins filed suit in federal court, claiming that several defendants violated his constitutional rights because they: (1) were deliberately indifferent to the dangerous working conditions created by a leaking dishwasher and a prolonged shortage of safety overshoes; (2) acted contrary to policy and procedures that governed their conduct at the time of the incident by failing to provide Watkins with the necessary safety overshoes; (3) were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment to the United States Constitution. After screening, Watkins was allowed to proceed only against Defendant Lancor on his claim that Lancor was deliberately indifferent to his serious need for medical treatment. Watkins' claims about the allegedly dangerous working conditions were dismissed for failing to state a federal claim. (ECF No. 7 at 5-6.) Lancor now argues that Watkins' claim of deliberate indifference to his serious medical needs is not properly before the court because Watkins failed to properly exhaust his administrative remedies.

4

**LEGAL STANDARD**

Summary judgment shall be granted if the moving party shows from "the pleadings, depositions, answers to interrogatories, and admissions on files . . . that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . .," but the requirement for granting a motion for summary judgment is that "there be no genuine issue of material fact." *Anderson*, 477 U.S. at 248. A dispute over a fact that "might affect the outcome of the suit" is a "material fact" and is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. If the record as a whole, however, could not lead a reasonable trier of fact to find for the nonmoving party, there is not genuine issue for trial and summary judgment shall be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**ANALYSIS**

The Prison Litigation Reform Act requires all prisoners who intend to file a federal lawsuit to first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Section 1997(e)(a) makes clear that "no action shall be brought . . . until such administrative remedies as available are exhausted." Moreover, "exhaustion is a precondition to suit" and thus requires a prisoner to have taken the necessary steps in seeking an administrative remedy before filing the suit in court. *See Perez v. Wis. Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). If a suit is filed by a prisoner

before available administrative remedies have been exhausted, the suit must be dismissed because the district court lacks the discretion to resolve the claim on the merits. *Id.* at 535.

In order to exhaust administrative remedies, a prisoner must follow the rules governing the filing and prosecution of the complaint as required under state law. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred."). A prisoner must not only exhaust the available administrative remedies, but also *properly* exhaust those available administrative remedies in compliance with an agency's deadlines and other critical procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 91-92 (2006) (emphasis added). The court determines whether a prisoner has properly exhausted administrative remedies. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). The PLRA exhaustion rule is "comprehensive" and "very broad." *Smith v. Zachary*, 255 F.3d 446, 451-52 (7th Cir. 2001). There is no exception to the PLRA exhaustion requirement for substantial compliance, and a good faith attempt to exhaust is not enough. *Id.* at 452.

In Wisconsin, a prisoner is required by law to file offender complaints through the Inmate Complaint Review System (ICRS), which is set out in the Chapter DOC 310 of the Wisconsin Administrative Code. *See* Wis. Adm. Code § DOC 310.01 et seq. Section DOC 310.09 outlines the necessary steps a prisoner must take in order to properly file an offender complaint. A prisoner must first file a complaint with the institution's institution complaint examiner (ICE) within 14 calendar days after the occurrence giving rise to the offender complaint. § DOC 310.09(6). A complaint filed with the ICE is to "contain only one issue per complaint, and shall clearly identify the issue." § DOC 310.09(1)(e). The ICE reviews complaints and either rejects and returns the

6

complaint to the inmate, or makes recommendations for action to a reviewing authority. §§ DOC 310.11 and 310.12. The reviewing authority then dismisses or affirms the grievance on the merits, or returns it for further investigation. Adverse decisions may be appealed. Complaint rejections are reviewed by the institution reviewing authority, which reviews only the basis for the rejection. § DOC 310.11(5-6). When a reviewing authority dismisses a complaint on the merits, a prisoner may appeal to the corrections complaint examiner (CCE). § DOC 310.12(3). The CCE conducts additional investigation when appropriate and makes a recommendation. The Secretary of the Wisconsin Department of Corrections then renders a final decision. § DOC 310.14.

Here, Watkins failed to properly exhaust the administrative remedies that were available to him. Watkins' original complaint was rejected by the ICE because he failed to state what his complaint was. Watkins was instructed to re-file his offender complaint and specifically state his complaint. He re-filed his offender complaint with the following sentence added: "I'm complaining about the negligence that the kitchen staff shows by not making my working conditions safer." (Rose Aff. Ex. B. 00021.) Watkins included no mention of being refused medical care. He only stated "I've already talked with the kitchen supervisors about this and chef Tom [Lancor] wrote an accident report." (*Id.*) There is no indication in Watkins' offender complaint that Lancor or any other staff member ignored his request for medical assistance or required him to continue working despite his injuries.

Watkins nevertheless contends that he raised the medical attention issue in his appeal to the CCE. However, to the extent that Plaintiff attempted to raise his medical attention claim on appeal, the issue was not properly raised because Plaintiff never included the issue in Offender Complaint GBCI 2010-7242 or in a timely separate complaint. The CCE only reviews decisions of the

7

institution's reviewing authority. § DOC 310.13(1). Thus, the CCE cannot review an issue never raised and presented to the ICE or the institution's reviewing authority. Although the administrative rules require inmates to include only one issue per complaint, Plaintiff had the opportunity to file more than one complaint regarding the incident that occurred on March 15, 2010. He failed to do so. In order to properly raise an issue and exhaust administrative procedures, a prisoner must comply with the administrative procedures as required by the ICRS. *Pozo*, 286 F.3d at 1023.

Watkins also relies on *Bouman v. Robinson,* No. 07-C-367-C; 2008 WL 2595180, *2 (W.D. Wis. June 27, 2008), for the proposition that nothing in the ICRS appeal procedures prevents an inmate from amending or modifying complaints on appeal to include new issues. In *Bouman*, the court considered whether the prisoner properly exhausted his administrative remedies when he raised a new issue in his administrative appeal. *Id.* The defendants could not point to a rule of the federal Bureau of Prisons that prohibited the plaintiff from amending his complaint on appeal, and therefore, the court ruled that defendants were not entitled to summary judgment. *Id.* But *Bouman* was a federal prisoner subject to federal prison procedure under the Bureau of Prisons. *Id.* This case is governed by the administrative remedies in Wisconsin's prisons, the ICRS. Here, Lancor relies on section DOC 310.09(1)(e), which allows an inmate to include only one issue in a complaint. There is no provision allowing inmates to add additional issues on appeal. Thus, *Bouman* is clearly distinguishable from the facts of this case.

In sum, Watkins failed to properly raise the issue of whether Lancor was deliberately indifferent to his medical needs with the institution before filing his federal complaint. No mention of the issue was included in Offender Complaint GBCI-2010-7242, the only complaint that was reviewed by the institution or the CCE. The purpose of the ICRS procedure is "to afford inmates

8

[ ] a process by which grievances may be expeditiously raised, investigated, and decided." Wis. Admin. Code § DOC 310.01. Plaintiff was afforded a process to raise the medical attention issue and to have his complaint investigated and decided through the ICRS. The fact that he failed to properly do so prevents this court from reviewing his claim on the merits. Because there is no dispute to as to whether Plaintiff exhausted his administrative remedies, Defendant's motion for summary judgment will be granted.

Finally, it is worth noting that even if Watkins had properly exhausted his administrative remedies, his complaint would not survive. It is clear from the record that Lancor only supervised Watkins while he was working in the kitchen. He was not in a position to prevent Lancor from seeking medical attention as soon as his work shift ended. Even assuming Lancor knew Watkins' finger was swollen and in pain, requiring him to complete his shift before seeking medical attention would not be the kind of deliberate indifference to serious medical needs required to constitute the cruel and unusual punishment prohibited by the Eighth Amendment.

## CONCLUSION

Plaintiff Watkins has failed to exhaust his administrative remedies. Accordingly, Defendant's motion for summary judgment is **GRANTED** and Plaintiff Watkins's section 1983 case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   6th   day of June, 2013.

                                      s/ William C. Griesbach
                                      William C. Griesbach, Chief Judge
                                      United States District Court