UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**RONNIE WATKINS,**

                Plaintiff,

v.                                 Case No. 13-cv-7-pp

**TOM LANCOR,**

                Defendant.

---

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

The plaintiff, Ronnie Watkins, is a *pro se* prisoner who filed this action pursuant to 42 U.S.C. § 1983. He claims that the defendant, Tom Lancor, violated his constitutional rights because he did not immediately send Mr. Watkins to a medical professional after the plaintiff injured his finger while working at his prison kitchen job. Lancor has filed a motion for summary judgment.[1] The court grants Lancor's motion, for the reasons explained below.

### I. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[1] On June 6, 2013, Chief Judge William C. Griesbach granted Lancor's motion for summary judgment based on exhaustion of administrative remedies and entered judgment in favor of Lancor. Watkins appealed and on April 3, 2014, the United States Court of Appeals for the Seventh Circuit issued a mandate vacating that portion of Judge Griesbach's judgment that dismissed Watkins's claim against Lancor for denial of medical care.
    On November 18, 2014, Lancor filed the instant motion for summary judgment. On December 29, 2014, the Clerk of Court reassigned the case to this court.

1

324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## II. RELEVANT FACTS

The plaintiff was incarcerated at the Green Bay Correctional Institution ("GBCI") at all times relevant to this action. The Wisconsin Department of Corrections ("DOC") employed Lancor as a corrections food service leader 2 at GBCI from April 22, 1985 to July 1, 2014.[2] As corrections food service leader 2, Lancor worked under the general supervision of the food service

---

[2] Lancor retired on July 1, 2014.

2

administrator and the lead chef on duty. Lancor's primary responsibility was "tray make-up." He supervised tray make-up activities, the pot/pan room and dairy cooler, sanitation activities, and food preparation.

A. Procedural History

Judge Griesbach's January 31, 2013 screening order allowed the plaintiff to proceed on a 42 U.S.C. §1983 cause of action based on Lancor's alleged deliberate indifference to the plaintiff's serious medical need, an Eighth Amendment claim. Specifically, the plaintiff alleged that on March 15, 2010, he injured his finger at his prison job, that he informed Lancor of the injury, and that he requested medical attention, but that Lancor did not request medical care for him. The plaintiff also alleges that he was required to continue working shifts until he saw a nurse on March 18, 2010.

B. Chronology of Events Related to Watkins's Finger Injury

Inmates entering GBCI receive an inmate handbook informing them that if they require non-emergency medical attention they must submit a Health Services Request ("HSR") to the Health Services Unit ("HSU"). (Lutsey Aff. ¶ 7, Exh. 1001 at 12). The handbook also provides that if an inmate has a medical emergency, or feels that he needs to be seen right away for an urgent medical need, the inmate should report this information to his work, school, or unit supervisor, who will then notify the HSU. HSU personnel will determine whether the inmate's condition requires immediate treatment. (Lutsey Aff. ¶ 8, Exh. 1001 at 12.)

3

On March 14, 2010, the plaintiff completed an HSR. In this request, the plaintiff wrote the following: "I need to see staff about my ring-finger on my left hand. I dropped an iron rack on my hand about two or three weeks ago." (Lutsey Aff. ¶ 9, Exh. 1002 at 1.) Nurse Kathy Lemens responded to the plaintiff's HSR on March 15, 2010, informing him that he would receive a sick call appointment for his finger injury within one week. (Lutsey Aff. ¶ 10, Exh. 1002 at 1.)

On March 15, 2010, the plaintiff worked in the GBCI kitchen's "B Tier," on "Dish Room, AM Group 1" in charge of silverware. The Dish Room, AM Group 1 position works in the dish room for the breakfast and noon meals. The shift begins at 6:00 a.m. and ends around 12:50 p.m. On March 15, 2010, the plaintiff's responsibilities included unloading trays that came through the dish machine, and rinsing and sorting silverware.

On March 15, 2010, Lancor worked in the GBCI food facility from 9:00 a.m. to 5:00 p.m. His primary responsibilities were tray make-up and the preparation of satellite and dietary meals. (Lancor Decl. ¶ 6.)

At around 11:15 a.m. on March 15, 2010, the plaintiff informed Lancor that he had slammed his finger under a metal silverware container and hurt his finger. Lancor looked at the plaintiff's finger.

According to Lancor, the plaintiff then showed Lancor where, and demonstrated how, he had hurt his finger, by grabbing both handles and lifting the stainless steel silverware rack. (Lancor Decl. ¶ 8.) The plaintiff disputes that he "demonstrated" the accident to Lancor by lifting the silverware rack.

4

According to the plaintiff: "I went to defendant Lancor and informed him that I had just dropped the rack on my hand and that I was in severe pain and need[ed] to see the medical staff." (Watkins Decl. ¶ 5.) The plaintiff further alleges: "after I told Mr. Lancor what had happen[ed], he looked at my finger and took me into the kitchen office and filled out a[n] accident report." (Watkins Decl. ¶ 6.)

The plaintiff asked for medical attention. Based on their discussion and the appearance and mobility of the plaintiff's finger, Lancor did not believe the injury required immediate medical attention. (Lancor Decl. ¶ 9.) After the plaintiff and Lancor talked, the plaintiff returned to his duties until his shift ended (at about 1:00 p.m). After the plaintiff concluded his March 15, 2010, shift, Lancor had no more interactions with the plaintiff that day.

Lancor completed an Accident Report to document the incident. In the report, Lancor wrote the following:

> Inmate Watkins was carrying a stainless steel silverware container, that just came out of the dish machine. The left side of container slipped out of his hand causing the container to fall onto his finger which was on the counter next to the sink.

(Lancor Decl. ¶ 11, Exh. 1011 at 1.)

The plaintiff alleges that after the completion of his shift he returned to his housing unit, told the unit sergeant about his injury, and asked him to "call medical for me." (Watkins Decl. ¶ 9.) The plaintiff alleges that the sergeant placed the call, and was told to have the plaintiff fill out a medical request slip. (*Id.*)

5

On March 18, 2010—three days after the incident in the kitchen—the plaintiff saw Nurse VanderKinter in the HSU for his finger injury. In the progress notes from this appointment, Nurse VanderKinter wrote the following:

> [Patient] seen per HSR – reports he dropped a silverware tray on [left] hand when doing dishes approx. 1 month ago. Today [complains of] pain anterior distal knuckle area [left] ring finger. Area is [slightly] tender to palpation [with] no real swelling noted. Good capillary refill of finger tip left ring finger. [Patient] is able to bend finger.

(Lutsey Aff. ¶ 11, Exh. 1003 at 1-2.) Nurse VanderKinter also noted the following in the progress notes from the appointment:

> [Patient] has [ibuprofen] order which he has been using for initial pain and swelling. Advised [warm, moist compress] and gentle stretching/exercises after warm, moist compress].

(Lutsey Aff. ¶ 12, Exh. 1003 at 2, Exh. 1004 at 1.) On the same day, March 18, Nurse VanderKinter consulted with Dr. Richard Heidorn, and Dr. Heidorn ordered an x-ray for Watkins's finger.

On March 25, 2010, the plaintiff had an x-ray taken of his left ring finger. The x-ray report diagnosed the plaintiff with, "an avulsion fracture at the proximal dorsal aspect of the distal phalanx of the 4th finger." In lay terms, this means that the plaintiff had suffered a break toward the tip of his left ring finger, on the nail side of the finger. (Lutsey Aff. ¶ 14, Exh. 1006 at 1.) Dr. Heidorn provided a treatment plan of splinting the finger in hyperextension for ten weeks.

### III. DISCUSSION

Lancor argued that the plaintiff's claim fails as a matter of law because Lancor did not know that the plaintiff had a serious medical need, and because

6

he reasonably responded to the plaintiff's report of workplace injury. Lancor also contended that he did not cause a delay in the plaintiff receiving medical attention and that, even if he did, the plaintiff does not provide verifying medical information that a delay caused harm.

The plaintiff responded that the court should deny Lancor's motion for summary judgment because he did not facilitate immediate medical treatment for the plaintiff's finger injury. The plaintiff indicated that he was in extreme pain when he broke his finger, and that Lancor did not allow him to stop working or send him out for medical care. Instead, the plaintiff argued, he waited in pain with a swollen finger and continued working for three more days before he finally saw a nurse, got a splint, and received a new work assignment that would not aggravate his injury. The plaintiff stated that Lancor decided himself that the plaintiff should not have emergency treatment, contrary to the GBCI's handbook directive indicating that only medical staff decide whether inmates have a medical emergency.

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (quoting *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009); *see also Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs. *Arnett*, 658 F.3d at 750 (citing *Estelle*, 429 U.S. at 104). Accordingly, a claim based on deficient medical care must

7

demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition. *Arnett*, 658 F.3d at 750 (citation omitted). "Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez*, 577 F.3d at 828 (quoting *Estelle*, 429 U.S. at 103).

A medical need is considered sufficiently serious if the inmate's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). "A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Id.* at 857 (quoting *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)). A broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit. *Id.* at 861 (citing *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (collecting cases)). On the other hand, a prison medical staff "that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue – the sorts of ailments for which many people who are not in prison do not seek medical attention – does not by its refusal violation the Constitution." *Gutierrez v.*

8

*Peters*, 111 F.3d 1364, 1372 (1997) (quoting *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)).

To demonstrate deliberate indifference, a plaintiff must show that the defendant "acted with a sufficiently culpable state of mind," something akin to recklessness. A prison official acts with a sufficiently culpable state of mind when he or she knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. *Roe*, 631 F.3d at 857. A prison official cannot be found liable under the Eighth Amendment unless the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the interference." *Gutierrez*, 111 F.3d at 1369 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference "is more than negligence and approaches intentional wrongdoing." *Arnett*, 658 F.3d at 759 (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)). It is not medical malpractice; "the Eighth Amendment does not codify common law torts." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Lancor does not argue that the plaintiff's broken finger was not an objectively serious medical need under the Eighth Amendment. The court determines that the plaintiff's broken finger was a "serious medical need" of the type described in the case law. *See Roe*, 631 F.3d at 861. The question the court must decide is whether Lancor acted with deliberate indifference when he

decided not to immediately refer the plaintiff to the HSU after the plaintiff reported his finger injury.

It is undisputed that at about 11:15 a.m. on March 15, 2010, the plaintiff informed Lancor that he slammed his finger under a metal silverware container and hurt his finger.[3] The plaintiff told Lancor that he was in "severe pain" and that he needed to see medical staff. Lancor looked at the plaintiff's finger and took the plaintiff into the kitchen office to fill out a medical report. Based on his conversation with the plaintiff, as well as the appearance and mobility of the plaintiff's finger, Lancor did not believe that the injury required immediate medical attention. The plaintiff returned to work until his shift ended, around 1:00 p.m. The plaintiff returned to his housing unit after work,[4] told the unit sergeant about his injury, and asked him to "call medical for me." (Watkins Decl. ¶ 9.) The sergeant called medical and was told to have the plaintiff fill out a medical request slip. (*Id.*)

The plaintiff saw the nurse on March 18, 2010. Her progress notes reference the prior finger injury referenced in the March 14, 2010, HSR, not the March 15, 2010, injury. Nurse VanderKinter's notes also state that the plaintiff had been using ibuprofen for "initial pain and swelling;" it is not clear when the plaintiff first received the ibuprofen. Dr. Heidon ordered an x-ray of the plaintiff's finger, which took place on March 25, 2010. The x-ray revealed

---

[3] Confusingly, on March 14, 2010, the plaintiff submitted an HSR stating: "I need to see staff about my ring finger on my left hand. I dropped an iron rack on my hand about two three weeks ago." (Lutsey Aff ¶ 9, Exh. 1002 at 1.)

[4] Institution records indicate that the plaintiff also attended "PM Recreation" that day, although the plaintiff disputes that assertion. (Reimer Aff. ¶ 12, Exh. 1009 at 1.)

that the tip of the plaintiff's ring finger on his left hand was broken. Dr. Heidorn provided a treatment plan of splinting the finger in hyperextension for ten weeks.

The plaintiff's claim against Lancor boils down to whether Lancor acted with deliberate indifference when he did not immediately send the plaintiff to a medical professional after the plaintiff reported his finger injury. The facts reveal that Lancor discussed the plaintiff's injury with him, looked at his finger, and took him back to the kitchen office to fill out an injury report. Based on their discussion and the appearance of the finger, Lancor determined that the plaintiff did not require immediate medical attention.

In the first instance, the plaintiff's claim almost amounts to a malpractice claim—he appears to argue that Lancor violated his Eighth Amendment rights, through deliberate indifference, by not recognizing that the plaintiff's finger was broken. It is undisputed, however, that Lancor did not know that the plaintiff's finger was broken. Lancor was not a nurse, doctor or other trained medical professional. Even if he were, medical malpractice in the form of an incorrect diagnosis or improper treatment does not state an Eighth Amendment claim. S*ee Gutierrez*, 111 F.3d at 1374 (doctor's incorrect assessment that cyst was not infected not actionable).

The observation that Lancor was not a medical professional leads to the plaintiff's next argument—that Lancor's failure to immediately refer him to a medical professional violated GBCI policy. Specifically, the plaintiff argues that the GBCI policy handbook stated that only medical staff decide whether a

11

serious medical injury exists, and that Lancor—who was not medical staff—violated that policy on March 15 by making such a decision himself, rather than referring the plaintiff immediately to a member of the medical staff. The Seventh Circuit has held, however, that "a violation of state law is not a ground for a federal civil rights suit." *Guajardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010). If a person believes that prison staff have violated a state law or a prison guideline, there is a procedure available, but that procedure involves starting with the inmate grievance system, followed by (if necessary) an administrative appeal, and then a petition for certiorari to the state circuit court. *Johnson v. Foster*, ___ F.3d ___, docket no. 13-2008 (7th Cir. May 6, 2015).

The plaintiff also argues that Lancor unnecessarily delayed him from receiving treatment for his finger. The law provides that, under certain circumstances, a delay in treating even non-life threatening conditions can constitute deliberate indifference. *See Arnett*, 658 F.3d at 753 (delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). "The length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1070 (7th Cir. 2012) (citing *McGowan*, 612 F.3d at 640). A few days' delay in addressing a severely painful but readily treatable condition states a deliberate indifference claim. *Id. Compare Grieveson v. Anderson*, 538

F.3d 763, 779 (7th Cir. 2008) (guards could be liable for delaying treatment of broken nose for a day and a half); *Edwards*, 478 F.3d at 827 (a plaintiff who painfully dislocated his finger[5] and was needlessly denied treatment for two days stated a deliberate-indifference claim, reversing the district court's dismissal) *with Gutierrez v. Peters*, 111 F.3d at 1374 (no valid claim for six-day delay in treating a mild cyst infection).

The court concludes that the plaintiff's circumstances do not support a finding that any delay Lancor caused constituted deliberate indifference. At most, Lancor delayed the plaintiff from receiving treatment until the end of his March 15, 2010 work shift—up to two hours. The record reveals that when the plaintiff made his complaint after completing his shift, he made it to a sergeant, who told him to fill out a medical form. It is not clear whether the plaintiff followed that direction and filled out a form; the record shows that the plaintiff filed only one HSR relating to a finger injury—the HSR he filed on March 14, 2010, the day *before* the accident, which referenced a two or three-week-old injury to the same finger. All the court can tell from the record is that the plaintiff made his complaint to the sergeant on March 15, and that he saw a nurse on March 18. (The nurse did not diagnose a broken finger; it was not until the x-ray results came back after March 25 that it became clear that the plaintiff had suffered a break.)

Lancor's decision caused a maximum of two hours of delay in treatment. The plaintiff was able to contact a sergeant on the same day he dropped the

---

[5] The plaintiff in *Edwards* suffered an "open dislocation" – a bone in his middle finger was pushed severely backwards and punctured the skin. *Id.* at 827.

13

tray on his finger. For reasons that are not clear, he did not see a nurse until three days later; there is no HSR relating to the March 15 incident, which may explain part of the three-day delay. Regardless, Lancor was not responsible for that three-day delay. Nor was Lancor responsible for the delay between the time the plaintiff saw the nurse and the time he was x-rayed. If Lancor's decision caused a delay, it was minimal, and the plaintiff has not submitted any proof that the short delay exacerbated his pain or injury. Applying the *Smith* and *McGowan* factors, the court concludes that the length of the delay was brief, and that diagnosis and treatment were sufficiently complex in that diagnosis required an x-ray, and treatment could be prescribed and carried out only by a physician. Thus, any delay Lancor may have caused does not rise to the level of deliberate indifference.

Finally, the court makes a general observation regarding the plaintiff's allegations that Lancor was deliberately indifferent. The record shows that Lancor responded reasonably to the plaintiff's injury. Lancor did not ignore the plaintiff or dismiss his complaints or concerns. He discussed the injury with the plaintiff, looked at the plaintiff's finger and assessed the plaintiff's mobility. He based his decision not to immediately refer the plaintiff to the medical staff on the results of these assessments. *Cf. Edwards*, 111 F.3d at 830 (prisoner who alleged that he severely injured his finger and failed to receive adequate, timely care because the doctor did not want to interrupt his holiday and where delay resulted in permanent disfigurement, loss of range of motion, and the infliction of unnecessary pain stated Eighth Amendment medical care claim).

14

This is not the situation described in *Gutierrez*, in which Lancor "[knew] of and disregard[ed] an excessive risk to inmate health or safety," or was "both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . [drew] the interference." *Gutierrez*, 111 F.3d at 1369 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The undisputed facts do not support that conclusion.

## IV. CONCLUSION

The court finds that the undisputed facts do not support a finding that Lancor acted with deliberate indifference to the plaintiff's serious medical need, and thus do not support a claim that Lancor violated the plaintiff's Eighth Amendment rights. Because there is no genuine issue of material fact in dispute, and because the court finds that the defendant is entitled to judgment under the law, the court finds in favor of the defendant.

The court **GRANTS** the defendant's motion for summary judgment (ECF No. 55).

The court **ORDERS** the Clerk of Court to enter judgment dismissing this action.

Dated at Milwaukee this 11th day of May, 2015.

BY THE COURT:

_____
HON. PAMELA PEPPER
**United States District Court Judge**